**SO ORDERED.**

**SIGNED this 18 day of October, 2013.**



_____
**A. Thomas Small**
**United States Bankruptcy Court Judge**

_____

```
         UNITED STATES BANKRUPTCY COURT
       EASTERN DISTRICT OF NORTH CAROLINA
                WILMINGTON DIVISON
```

IN RE:

JOHN NICHOLS PONOS,                    CASE NO. 12-04309-8-ATS
                                       CHAPTER 7
        DEBTOR.
_____         _____

EASTERN SKATEBOARD SUPPLY,
INC. AND REGGIE BARNES,

        PLAINTIFFS,                    AP NO. 13-00014-8-ATS

    v.

JOHN NICHOLAS PONOS,

        DEFENDANT.

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The matter before the court in this adversary proceeding to determine pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4) the dischargeability of a debt is the motion for summary judgment filed by the plaintiffs, Eastern Skateboard Supply, Inc. ("Eastern") and Reggie Barnes.  A hearing was held on September 17, 2013, in Raleigh, North Carolina.  The defendant, John Nicholas Ponos, who is a pro se chapter 7 debtor and who is

appearing pro se in this adversary proceeding, did not file a response to the motion for summary judgment and did not attend the hearing. This is a core proceeding that this court may hear and determine. 28 U.S.C. §§ 157(b)(1) and 157 (b)(2)(I). For reasons that follow, the motion for summary judgment will be denied.

## BACKGROUND

Mr. Ponos filed a petition for relief under chapter 13 of the Bankruptcy Code on June 8, 2012, but on October 29, 2012, prior to confirmation of a chapter 13 plan, the case was converted to chapter 7. The debtor previously was a chapter 13 debtor in this district from April 24, 2009, to April 23, 2010 (Case No. 09—03350—8—JRL).

The debt that is the subject of this proceeding arose from a loan of $20,000 made by Eastern. Mr. Ponos was a sales manager at a Toyota dealership in Wilmington, North Carolina, and sold several cars to Mr. Barnes. In September, 2009, Ponos told Barnes that he needed $20,000 to make support payments in a domestic case to keep from going to jail, and asked Barnes to lend him that amount. Mr. Barnes was an officer of Eastern and Eastern made the $20,000 loan. The $20,000 check that was written by Eastern to Ponos stated that it was for "Loan Repaid in 90 days." There was no promissory note executed, but Ponos

2

did give Eastern a personal check dated September 23, 2009, in the amount of $20,000.  Apparently, the arrangement was that the check could be cashed if the loan was not repaid in 90 days. When the loan was not repaid as agreed, Eastern deposited the check, but the check was not honored and was returned "stop payment."

Eastern and Barnes brought a civil action against Ponos on November 16, 2010, in Superior Court for New Hanover County, North Carolina (Case No. 10-CVS-5295), asserting claims for fraud, breach of contract, and unfair and deceptive trade practices.  Mr. Ponos filed a pro se answer and counterclaim, and Eastern and Barnes filed a motion for summary judgment. Ponos did not respond to the motion, he did not attend the hearing, and the state court entered summary judgment in favor of Eastern and Barnes.  The court awarded damages of $20,000 for breach of contract trebled to $60,000 plus attorney's fees of $7,040 and costs.  It is that total amount that Eastern and Barnes contend should be nondischargeable.

The crux of the debtor's wrongdoing, according to the plaintiffs, is that when Ponos asked Barnes for the loan he did not disclose that he was a chapter 13 debtor.  Mr. Barnes maintains that had he known that Ponos was a chapter 13 debtor, Eastern would not have made the loan.

3

The plaintiffs support their motion for summary judgment with an affidavit of Barnes that was filed in connection with the state court action, and with the state court judgment. They contend that there are no genuine issues of material fact and, therefore, they are entitled to judgment as a matter of law. As previously mentioned, the defendant did not respond to the motion for summary judgment and did not attend the hearing. The defendant, however, did file an answer to the complaint in which he denies that he misrepresented his financial condition, states that he was never asked about his financial situation, and that the plaintiffs knew his financial and personal background.

## STANDARD OF REVIEW

Summary judgment is appropriate pursuant to Fed. R. Civ. P. 56, made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056, "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); Fed. R. Bankr. P. 7056; see Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993) (stating that summary judgment is not a vehicle for the resolution of disputed factual issues). In

making this determination, "the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, Celotex, 477 U.S. at 325; however, the non-moving party cannot rely on the allegations or denials in its pleadings, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Therefore, summary judgment is allowed where "the moving party 'has established his right to a judgment with such clarity as to leave no room for controversy.'" Portis v. Folk Constr. Co., 694 F.2d 520, 522 (8th Cir. 1982)(citations omitted).

## DISCUSSION

Section 523(a), lists nineteen exceptions to discharge, which are construed "narrowly 'to protect the purpose of providing debtors a fresh start.'" Nunnery v. Rountree (In re Rountree), 478 F.3d 215, 219 (4th Cir. 2007) (quoting Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 130 (4th Cir. 2007)).

5

Section 523(a)(2)(A) excepts from discharge any debts arising from money, property, services or credit obtained by the debtor through fraud or the use of false representations or pretenses.  11 U.S.C. § 523(a)(2)(A); see, e.g., Cohen v. de la Cruz, 523 U.S. 213, 215, 218 (1998) (holding that " § 523(a)(2)(A) prevents the discharge of all liability arising from fraud[,]" which includes "debts 'resulting from' or 'traceable to' fraud." (citation omitted)); Rountree, 478 F.3d at 219-20 ("Congress intended § 523(a)(2) to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means."). For a debt to be excepted from discharge under § 523(a)(2)(A), all the elements of fraud must be established: "(1) false representation; (2) knowledge that the representation was false; (3) intent to deceive; (4) justifiable reliance on the representation; and (5) proximate cause of the damages." Entrust Admin. Se., Inc. v. Peak (In re Peak), Adv. No. 12-00126, 2013 WL 4478954, at *3(Bankr. E.D.N.C. Aug. 20, 2013) (citing Brannan v. Chorman (In re Chorman), Adv. No. 12—00015, 2012 WL 6629656(Bankr. E.D.N.C. Dec. 19, 2012)).  With respect to the third element, intent to deceive, "'[a] debtor will be found to have acted with the requisite intent to defraud . . . when, at the time the transaction occurred, it is established that the debtor, for personal gain, knowingly [misled] the investor as to

6

a material fact concerning the [debt].'" Ramirez—Lopez v. Cox (In re Cox), Adv. No. 11—00259, 2012 WL 6681805, at *3 (Bankr. E.D.N.C. Dec. 21, 2012).

The plaintiffs' motion for summary judgment in this adversary proceeding relies on the judgment that was entered in state court, and absent that judgment, summary judgment would not be warranted under either § 523(a)(2)(A) or § 523(a)(4).

When viewed in a light most favorable to the defendant as the non—moving party, the evidence before the court does not conclusively establish that the defendant had the requisite intent to deceive or that he knew, at the time of the loan transaction, that his failure to disclose his pending chapter 13 bankruptcy was false. Mr. Barnes' statement that Ponos did not disclose the fact that he was a chapter 13 debtor is not sufficient, by itself, to show that Ponos had the requisite intent to deceive.

Furthermore, there is nothing present in the pleadings or the documents supporting the motion for summary judgment that present a claim under § 523(a)(4). Section 523(a)(4)excepts from discharge any debt incurred by the debtor while acting in a fiduciary capacity for fraud, defalcation, embezzlement, or larceny. 11 U.S.C. § 523(a)(4). A debt is nondischargeable, pursuant to § 523(a)(4), if "the debtor committed (1) fraud or defalcation (2) while acting in a fiduciary capacity." Camp

7

Flintlock, Inc. v. Stephenson (In re Stephenson), Adv. No. 12–00228, 2013 WL 593900, at *5 (Bankr. E.D.N.C. Feb. 15, 2013) (quoting Pahlavi v.. Ansari (In re Ansari), 113 F.3d 17, 20 (4th Cir. 1997)).  Fiduciary, for purposes of this exception, "'is limited to instances involving express or technical trusts.'" Memo Money Order Co. v. Davis (In re Davis), 371 B.R. 127, 135 (Bankr. E.D.N.C. 2007) (citing Harrell v. Merchant's Express Money Order Co. (In re Harrell), No. 98–1728, 1999 WL 150278, at *3 (4th Cir. Mar. 19, 1999) (unpublished)).  Therefore, "[t]he fiduciary relationship, contemplated by § 523(a)(4), does not exist where an express or technical trust has not been established prior to the alleged misappropriation of funds." Stephenson, 2013 WL 593900, at *5 (citing Davis, 371 B.R. at 135 (additional citations omitted)); see Keener Lumber Co. v. Perry (In re Perry), Adv. No. 02–00007–5–ATS, at 7 (Bankr. E.D.N.C. Oct. 7, 2002) (emphasizing "that 523(a)(4) requires an explicit trust, whether created by agreement or by statute . . . ."). The loan transaction in this case is insufficient to give rise to an express trust. See Stephenson, 2013 WL 593900, at *5.

It is a much closer call when the state court judgment is considered.  The state court order dated August 23, 2011, allowing the plaintiffs' motion for summary judgment, provided in pertinent part:

8

> THIS MATTER coming on before the undersigned Superior Court Judge at the August 1, 2011 civil session of the New Hanover County Superior Court, on Motion of Plaintiffs' Eastern Skateboard Supply, Inc. and Reggie Barnes ("Plaintiffs") for Summary Judgment pursuant to Rule 56 of the Rules of Civil Procedure, *as to both claims asserted in Plaintiff's Complaint ((1) Fraud; (2) Breach of Contract; and (3) Unfair and Deceptive Trade Practices)*, and the Court, having had opportunity to review the pleadings, the Motion for Summary Judgment, the transcript of the deposition of Defendant and the Affidavit of Reggie Barnes submitted in connection with the motion;
>
> And the Court finding that there is no triable issue of fact and that Plaintiff is entitled to judgment as a matter of law; that the Defendant's Counterclaim should be dismissed; that the Defendant willfully engaged in the acts described in Plaintiffs' Complaint; and that Plaintiffs are entitled to recover damages of $20,000.00 for Defendant's breach of contract, *a further award of $40,000 (or a trebling of the damages arising from the breach of contract) in connection with Plaintiffs' fraud claim;* and recovery of their attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1.

(emphasis added).

The plaintiffs contend that they are entitled to summary judgment because the defendant is collaterally estopped by the order granting summary judgment in the state court action from asserting that the debt arising from the judgment is nondischargeable. The court, however, does not agree that collateral estoppel applies in the circumstances of this proceeding.

The doctrine of collateral estoppel, commonly referred to as issue preclusion, **"**bars 'successive litigation of an issue of

9

fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  The doctrine, as adopted in North Carolina, operates to preclude re-litigation of a particular issue if "the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are the same as, or in privity with, the parties to the earlier action." Sartin v. Macik, 535 F.3d 284, 288 (4th Cir. 2008) (citing Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 429, 349 S.E.2d 552, 556-57 (1986)). A prior judgment is afforded "collateral estoppel effect only when, first, the specific issue was actually litigated in the prior action ... and, second, the party seeking to relitigate previously enjoyed a 'full and fair opportunity to litigate' the issue." Sartin, 535 F.3d at 290 (citing Hall, 318 N.C. at 432-34, 349 S.E.2d at 559-60).  A party invoking the doctrine must demonstrate that its opponent is seeking "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." Taylor, 553 U.S. at 892 (2008) (citations and internal quotation marks omitted).[1]

---

[1] Collateral estoppel, unlike *res judicata*, "may be employed in

10

Collateral estoppel, however, is inapplicable if, in the prior action, "several distinct matters may have been litigated, upon on or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered . . . ." Russell v. Place, 94 U.S. 606, 608 (1876) (recognizing that estoppel "must 'be certain to every intent'; and if upon the fact of a record any thing is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence."). Where the prior judgment may have been based upon several grounds, none of them are conclusively established for purposes of collateral estoppel because "it is impossible for another court to tell which issue or issues were adjudged by the rendering court." 1B Moore's Fed. Prac. ¶ 0.443(4), at 3915; see Azalea Drive—in Theatre, Inc. v. Hanft, 540 F.2d 713, 716—17 n.1 (4th Cir. 1976) (Butzner, J., dissenting). Accordingly, the doctrine of collateral estoppel is inapplicable where the prior decision or judgment upon which the party seeks to give collateral estoppel effect is ambiguous. See, e.g., Ariz. v. Cal., 530 U.S. 392, 418 (2000) (holding that

---

cases involving dischargeability questions, however, if the precise issue was raised in the prior proceeding between the same parties or parties in privity with them, if it was actually litigated, and if its determination was necessary to the outcome in state court." Irwin v. O'Bryan (In re O'Bryan), 190 B.R. 290, 295 (Bankr. E.D. Ky. 1995) (citations omitted)).

11

an ambiguous consent judgment was "too opaque to serve as a foundation for issue preclusion."); United States v. Int'l Building Co., 345 U.S. 502, 505—06 (1953).

The defendant is not collaterally estopped from challenging the basis of the judgment awarded in the state court because all the elements of collateral estoppel are not satisfied. The order allowing the plaintiffs' motion for summary judgment in the state court action contains several ambiguities that make it impossible for this court to ascertain which claims for relief were actually litigated and formed the basis of the judgment. The plaintiffs sought relief in state court upon three theories, (1) breach of contract, (2) fraud, and (3) unfair and deceptive trade practices. To prevail in the proceeding to determine the dischargeability of the debt under § 523(a)(2)(A) the plaintiffs must show fraud, and it is not clear that fraud was the basis of the state court decision.

The state court allowed summary judgment "as to *both claims asserted in Plaintiffs' Complaint* ((1) Fraud; (2) Breach of Contract; and (3) Unfair and Deceptive Trade Practices)." (emphasis added). "Both" suggests that the state court allowed summary judgment on two grounds, but it fails to specify which two. One of the two was apparently the breach of contract claim because the court awarded "damages of $20,000 for Defendant's breach of contract," but it is not apparent whether the other

12

basis was fraud or the claim for unfair and deceptive trade practices.  It makes a difference because fraud is not an element of an unfair and deceptive trade practices claim. See Crop Prod. Servs., Inc. v. Ormond, No. 4:11–CV–41, 2012 WL 147950, at *5 (E.D.N.C. Jan. 18, 2012) ("To state a claim under the UDTPA, a party must show (1) an unfair and deceptive act or practice (2) in or affecting commerce (3) which proximately caused injury to the party or to the party's business." (citations omitted)); see also Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700 (1992) (recognizing that an act is unfair where it is "'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers[]" and deceptive if it "has the capacity or tendency to deceive.'" (citations omitted)).

In addition to damages for breach of contract, the state court allowed "a further award of $40,000.00 (or a *trebling of damages arising from the breach of contract*) in connection with Plaintiffs' fraud claim[] . . . ." (emphasis added).  Although North Carolina courts may allow punitive damages for fraud, see generally Newton v. Standard Fire Ins. Co., 291 N.C. 105, 112–13, 229 S.E.2d 297, 301–02 (1976), the state court did not identify the damages as punitive damages and instead utilized the trebling of damages remedy provided for under the North Carolina Unfair and Deceptive and Trade Practices Act. N.C. Gen.

13

Stat. § 75-16 (providing that "if damages are assessed in such case[,] judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict."). Courts may use treble damages to penalize defendants for fraudulent conduct, but the remedy is more closely associated with an unfair and deceptive trade practices cause of action. The state court also allowed the plaintiffs to recover their attorney's fees under the Unfair and Deceptive Trade Practices Act. N.C. Gen. Stat. § 75-16.1 (allowing reasonable attorneys' fees "to the duly licensed attorney representing the prevailing party[] . . . as a part of the court costs and payable by the losing party[] . . . ."). Attorney's fees would not have been allowed if fraud was the second basis of the recovery.

It is possible that the state court intended to base its decision on breach of contract, fraud, and unfair and deceptive trade practices, but the judgment is ambiguous, and for that reason collateral estoppel does not apply.

Accordingly, there remains a genuine issue of material fact. The plaintiffs are not entitled to summary judgment and their motion is **DENIED.** To prevail at trial, the plaintiffs must show that Ponos made a false statement with the intent to deceive.

**END OF DOCUMENT**